**Opinion issued June 1, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00541-CR**

———————————

**AARON PHILIP FERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1609682**

---

## MEMORANDUM OPINION

A jury convicted Appellant Aaron Philip Fernandez of the offense of continuous sexual abuse of a young child and the trial court assessed his punishment at fifty years' incarceration. In three issues, Appellant argues (1) the evidence is

insufficient to prove that two or more acts of sexual abuse occurred during the time alleged in the indictment, (2) the trial court abused its discretion by admitting evidence that he threatened to kill the complainant and her family during the guilt-innocence phase of his trial, and (3) the trial court abused its discretion by allowing multiple witnesses to testify as an outcry witness about the same conduct.

We affirm the trial court's judgment.

## Background

Appellant Aaron Philip Fernandez ("Fernandez") was charged by indictment with sexually abusing his stepdaugther, K.V., who was twelve years old when the alleged abuse began. The indictment alleged that Fernandez continously sexually abused K.V., during a period of time of thirty or more days, and included the offenses of indecency with a child by contact committed on July 17, 2017, and October 31, 2017. Following a jury trial, the jury convicted Fernandez of the offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE § 21.02.

### A.     John Laymon

John Laymon ("Laymon") is a school counselor at K.V.'s middle school. Laymon testified that on February 21, 2018, K.V., who was then twelve or thirteen years old and in the seventh grade, came to see him at his office. According to Laymon, K.V. was visibly upset and was crying as she "kind of explained what was going on" and made "a disclosure that was sexual in nature." After speaking to K.V.,

2

Laymon contacted Child Protective Services ("CPS"). The Houston Police Department and CPS arrived at the middle school to investigate the matter.

## B.    Lisa Holcomb

Pursuant to Texas Code of Criminal Procedure Article 38.072, the State gave Fernandez written notice that it intended to call Lisa Holcomb ("Holcomb"), a forensic interviewer at the Harris County Child Assessment Center ("CAC"), as its outcry witness. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1) (requiring party intending to introduce hearsay statements through testimony of outcry witness to provide adverse party notice of its intent to do so, name of proposed outcry witness, and written summary of statement). An outcry witness is the person over the age of eighteen, other than the defendant, to whom the child first speaks about the offense. TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3); *see also Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013).

The trial court conducted a hearing outside of the jury's presence to determine whether K.V.'s outcry statements to Holcomb were reliable and whether Holcomb could be designated as an outcry witness. After the hearing, the trial court designated Holcomb at the State's outcry witness, holding that K.V.'s statements to Holcomb were reliable and the State had complied with all Article 38.072 notice requirements. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2) (requiring trial court to hold

hearing outside jury's presence to determine whether "statement is reliable based on the time, content, and circumstances of the statement").

During trial, Holcomb testified that on February 22, 2018, she interviewed K.V., who was living with Fernandez, her mother, and her four younger siblings. During the interview, K.V. disclosed to Holcomb that Fernandez had sexually abused her several times.[1] K.V. described to Holcomb eight different incidents of sexual abuse, the first of which occurred in July 2017 when K.V. was twelve years old.

K.V. told Holcomb that in July 2017, K.V.'s younger brother had dropped salt and pepper on the kitchen counter and Fernandez was angry with her because she had not been supervising him. According to K.V., Fernandez hit her, forced her to take down her pants and underwear, and touched her "bottom" with his hands. Fernandez also touched K.V.'s vagina with his hands and "rub[bed] between it" with his fingers. K.V. reported that Fernandez made her watch as he masturbated and ejaculated on the floor.

Holcomb testified that the second incident of sexual abuse occurred a "couple months after July" 2017. K.V. told Holcomb that Fernandez woke her up one night and asked her if she had been texting on an old cell phone belonging to her mother.

---

[1]    Holcomb testified that K.V. also "disclosed physical abuse, being choked[,] and . . . witnessing abuse to [sic] [her] siblings . . . .."

4

K.V. told Fernandez that she had not been texting anyone, but Fernandez did not believe her, and he told K.V. to "shut up and don't lie and take off your clothes." After directing K.V. to remove her pants and underwear, Fernandez "told her to turn over and face the table and . . . bend over." He "grabb[ed] her butt" with his hands and "put[] his fingers there" and "rubb[ed] it."

Holcomb testified that a third incident of sexual abuse occurred after K.V. went to the pool with her cousin. Fernandez, who saw K.V. and her cousin when they were walking back from the pool, berated K.V. for her "inappropriate" attire and told her he would come pick her up. Fernandez picked K.V. up at her cousin's house that evening and when they returned home, Fernandez took K.V. to his bedroom. According to K.V., Fernandez forced her to remove her clothes and stand naked in front of him for two hours while he used his phone, "grabb[ed] and squeeze[ed] her butt cheeks," touched and squeezed her chest, and rubbed "in the middle" of her vagina.

Holcomb also testified that K.V. told her about a fourth incident of sexual abuse, when Fernandez, while lying on his bed, told K.V. to take off her clothes, put her leg on his bed, and rub her vagina with her fingers. When K.V. started to cry, Fernandez said, "you must like this happening to you since you like getting in trouble."

5

Holcomb also testified about a fifth incident of sexual abuse, when Fernandez hit K.V., touched her, and took her into his bedroom. Fernandez then took out his penis and forced K.V. to watch him masturbate. Fernandez told K.V., "I'm going to make you do that for me." When K.V. refused, Fernandez put her hand on his penis. After K.V. tried to move her hand away, Fernandez told her, "I'm going to make you do it more if you don't listen." Fernandez told K.V. to get on her knees and he made her watch as he masturbated. K.V. told Holcomb that Fernandez also fondled her breasts and touched her vagina and "bottom" while he continued to masturbate.

K.V. reported to Holcomb that Fernandez sexually abused her again in January 2018. According to K.V., she had been shaving her legs in the bathroom when Fernandez came in the room and "made her sit on the bathtub and open her legs." Fernandez then rubbed K.V.'s vagina with his hands.

The seventh incident of sexual and physical abuse, which K.V. described to Holcomb as the "worst," occurred "a few weeks" before the February 22, 2018 interview. According to K.V., Fernandez made her go to his bedroom, forced her to take off her clothes, and took out his penis. Fernandez then told K.V. to turn around, face the window, and put her hands on the window. K.V. told Holcomb that Fernandez "covered the top of [his penis] where the white stuff comes out," and he "put it up between my legs." K.V. was crying and Fernandez told her to shut up.

6

According to K.V., Fernandez started to choke her and when she tried to remove his hand because she could not breathe, he "started choking [her] more."

The eighth incident of sexual abuse K.V. described to Holcomb also occurred before the February 22, 2018 interview. According to K.V., Fernandez stood behind her and he placed his penis "between her legs" and he pushed against her. Although his penis touched her vagina, "it didn't go inside." K.V. told Holcomb that Fernandez covered the tip of his penis with his hand, held K.V. still, and placed his penis "under her" and was "rubbing it under me but not in me." Fernandez then forced K.V. to place one leg up on a box and rub her vagina for twenty minutes while she wept. While K.V. rubbed her vagina, Fernandez used the flashlight on his phone to point at her vagina "so he could see if she was doing it right."

Separate from these instances of sexual abuse, K.V. also told Holcomb that Fernandez threatened her and her family. Holcomb testified:

> Q. Did [K.V.] ever make—did she ever indicate if the defendant made threats to her?
>
> A. Yes, she did.
>
> Q. What were those threats?
>
> A. He threatened to basically shave her head. He threatened to send her to juvenile detention. He had threatened to kill her and her family. So, yeah.
>
> Q. Did she disclose if the defendant had any guns or used any of the guns—any weapons?

7

A.    Yes, she did.

Q.    What did she say about that?

A.    She disclosed that he would point a gun to the mother's head. Also would point the gun at the brother and hit the brother in the head with the gun.

Q.    Would the defendant ever say anything to her when this happened?

A.    When—what incident are you—

Q.    When the threats with the gun happened.

A.    Yes.  I mean, he did.  He threatened to not only kill her, but the family, like I said.  So, yeah.

Fernandez did not object to Holcomb's testimony.

When asked later if K.V. had explained "why she never disclosed the sexual abuse before," Holcomb testified that K.V. "indicated in her own words that she was scared to tell" because Fernandez had "threatened to kill her and her family members."  Fernandez objected to Holcomb's testimony that Fernandez threatened to kill K.V. and her family members, arguing the testimony was inadmissible evidence of an extraneous offense or bad act.  The trial court overruled Fernandez's objection.

## C.    Dr. Reena Isaac

Dr. Reena Isaac ("Dr. Isaac") is a pediatrician at Texas Children's Hospital and the Baylor College of Medicine.  She is also the medical director of the CAC's medical clinic.  The clinic's staff conducts consultations and evaluations of children

suspected of physical and sexual abuse or neglect. Dr. Isaac testified that K.V. was examined at the CAC's medical clinic by Dr. Lauren Burge ("Dr. Burge"), a training fellow with Baylor College of Medicine's Child Abuse Pediatrics Program. Dr. Isaac, as the attending physician, supervised Dr. Burge. Dr. Isaac explained that the comprehensive medical examinations consist of questions about the child's medical history, including details of the abuse, because it is important for the examiner to "understand what has happened to the child's body" in order to "determine both the diagnosis and treatment of the child." According to Dr. Isaac, K.V. told Dr. Burge that Fernandez touched her vagina with his hands, put his penis between her legs, and touched her vagina with his penis. Dr. Isaac also testified that K.V. reported that the touching occurred more than three times between July 2017 and either December 2017 or January 2018.

**D.     Sherry Elder**

Sherry Elder ("Elder") is a licensed professional counselor with the CAC who provides therapy to child abuse victims and their families. Elder, who treated K.V. in 2018 and 2019, testified that she explained to K.V. that it was important for K.V. to be honest for the therapy to be effective. As part of the "trauma-focused cognitive behavioral therapy" Elder employed, she asked K.V. to describe her "scariest" and "worst" memories of abuse. According to Elder, K.V. was suffering from post-traumatic stress disorder ("PTSD") and K.V.'s articulation of her "trauma narrative"

was important to treat her PTSD. Elder testified that to graduate from therapy, it was necessary for K.V. to "no longer have those trauma symptoms, no longer having flashbacks, nightmares, disassociation, able to talk about the abuse without having, again, those trauma symptoms. Also, no longer having cognitive distortions."

Elder testified that during her therapy sessions, K.V. made multiple disclosures of sexual abuse as part of her trauma narrative. According to Elder, K.V. described the abuse by Fernandez "as a form of discipline." K.V. told Elder that after she went to the pool with a friend, Fernandez made her remove her clothes and then lectured her. According to K.V., Fernandez yelled at her, stroked his penis, and touched her vagina and breasts. Elder testified that as part of her treatment, K.V. told her about the "first memory" of abuse and "the scariest" memory. K.V. also disclosed to Elder that on a separate occasion, Fernandez told her to go into the kitchen where he forced K.V. to remove her pants and bend over. According to K.V., Fernandez "stroked" her vagina while yelling and cursing at her.

**E.  K.V.**

K.V. testified that she met Fernandez, whom she calls her stepfather, when she was four-years old. According to K.V., Fernandez began sexually abusing K.V. when she was twelve-years old. K.V. testified that her mother worked nights and Fernandez watched her and her younger siblings while their mother was at work. According to K.V., one of incidents occurred when Fernandez took her to the kitchen

10

and told her that "this is what he's going to do to me from now on every time I get in trouble." Fernandez made K.V. take off her pants and underwear and lean over the kitchen table. Fernandez then grabbed K.V.'s butt and touched her vagina with his hands. He then lectured K.V. and forced her to watch while he masturbated. Fernandez told K.V. not to tell anyone or else he would "do that again and he was going to hurt my family, my mom, my siblings." The next incident K.V. testified to occurred "later on" during the "summer" when she was twelve years old. According to K.V., Fernandez told her to go into the kitchen and take off her pants and then he touched her butt, legs, and vagina with his hands. Fernandez told her that "what he was doing is not wrong because it's a lesson."

K.V. testified about a third incident of abuse that occurred in Fernandez's bedroom. After K.V. went to the pool with her cousin without first getting Fernandez's permission, Fernandez sent K.V. to his bedroom, where he made her completely undress. After touching her breasts with his hands, Fernandez made K.V. stand naked in front of him for an hour. Fernandez then forced K.V. to bend over a chair and he spanked her. Fernandez next touched K.V.'s butt and breasts with his hands and then rubbed her vagina with his hand. Fernandez masturbated in front of K.V. and forced her to touch his penis.

K.V. testified that Fernandez would wake her up in the middle of the night and force her to go into the kitchen and take her clothes off. Fernandez would touch

11

K.V.'s butt, breasts, and vagina with his hands, and then he would touch himself. K.V. testified that this "happened pretty often." Other times, Fernandez called K.V. to his bedroom, where he forced her to remove her clothes and bend over. K.V. also testified that one time, Fernandez "took his penis out and he put it between my legs but he had his hand covering the tip." According to K.V., Fernandez put his penis between her legs "maybe three times." Fernandez also licked her vagina once. When asked how often the abuse happened, K.V. stated, "Pretty often. Maybe twice a month."

K.V. testified that her mother threatened to leave Fernandez after K.V. told her that Fernandez made her and her siblings take off their shirts. Afterwards, Fernandez called K.V. into his bedroom, where he choked her with his hands while "saying this is what I get for snitching and stuff." Although she did not remember when the abuse ended, K.V. testified that she was twelve years old when the abuse began in the summer, and she was thirteen years old the last time Fernandez assaulted her. After she reported the abuse to her school counselor, K.V. immediately moved out of the home she shared with Fernandez and, in March 2018, she moved in with her biological father.

On cross-examination, K.V. testified that she never liked Fernandez. K.V. denied falsely accusing him of sexually assaulting her because she did not like him. On re-direct examination, K.V. testified that she did not like Fernandez before he

began assaulting her because he hit her, he prevented her from seeing her family, and she had to get his permission before she was allowed to do anything.

After the State rested, Fernandez moved for a directed verdict on the grounds the State failed to prove that two or more acts of sexual abuse, "including and constituting the offense of indecency with a child by contact, [were] committed against K.V. between the time limits of July 17, 2017, and an act of offense of indecency with a child by contact against K.V. on October 31, 2017," as alleged in the indictment. The trial court denied Fernandez's motion.

## F.    Defense Witnesses

Fernandez called his mother, Doris Campa ("Campa"), as his first witness. Campa testified that she has known K.V. since K.V. was four years old and she interacted with K.V. many times when she visited Fernandez. According to Campa, K.V. appeared to be a happy child. Campa testified that K.V. never told her she was being abused and if K.V. had told her about the abuse, Campa would have called the police.

Nora Garcia ("Garcia"), Fernandez's sister, testified that she has known K.V. since K.V. was four years old and she encountered K.V. during the many times she visited Fernandez's home. Garcia testified that K.V. never told her she was being abused and if K.V. had told her about the abuse, Garcia would have called the police.

Salena Morales ("Morales"), Fernandez's sister, testified that she visited Fernandez's home and encountered K.V. there several times. Morales testified that she and K.V. were "very close" and K.V., who was a happy child, "would talk to [her] all the time whenever [she] went over, which was basically every day." According to Morales, K.V. never told her that she was being abused and if K.V. had told her about the abuse, Morales would have called the police.

Arna Fernandez ("Arna"), Fernandez's sister, testified that she visited Fernandez's home on weekends and encountered K.V., who was respectful, happy, and easy going. According to Arna, K.V. never told her she was being abused and if she had, Arna would have called the police.

## G. Fernandez

Fernandez testified in his defense. Fernandez testified that he met K.V. when he began dating her mother in 2005 and that K.V. was four years old at the time. According to Fernandez, K.V. did not like him "from the start" and she would "bite me, scratch me, pinch me and curse at me." Fernandez denied doing any of the things K.V. accused him of in her testimony. According to Fernandez, "That's sick. That's heinous. And that is just something I just would never do. Never."

## H. Closing Arguments

In his closing, Fernandez's counsel argued that K.V. lied about the abuse because she did not like Fernandez, and she wanted him out of her life. Defense

14

counsel cited to K.V.'s delayed outcry of abuse as evidence that K.V. fabricated her claims against Fernandez. According to defense counsel, Campa, Garcia, Morales, and Arna all testified they were close with K.V. and that if K.V. had told them that Fernandez was sexually abusing her, they would have protected K.V. and reported the abuse to the police. According to defense counsel, although K.V. had "ample opportunity" to report the abuse, she did not do so, and her failure to report the abuse to family members suggested she was being untruthful about her claims of abuse.

The jury convicted Fernandez of the offense of continuous sexual abuse of a young child and the trial court assessed his punishment at fifty years' incarceration.[2] This appeal followed.

## Sufficiency of the Evidence

In his first issue, Fernandez argues the evidence is insufficient to prove that two or more acts of sexual abuse occurred between July 17, 2017 and October 31, 2017, as alleged in the indictment. The State contends that evidence is sufficient because K.V.'s and Holcomb's testimony established that the abuse began in July 2017 and lasted "over a period of at least six months—substantially more time than alleged in the indictment or required by law."

---

[2] Continuous sexual abuse of a young child is a first-degree felony offense and is punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than ninety-nine years or less than twenty-five years. TEX. PENAL CODE § 21.02(h).

## A.      Standard of Review and Applicable Law

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine all evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). Thus, we defer to the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 318–19. While a factfinder is permitted to draw "reasonable inferences" from the evidence, it may not come to conclusions "based on mere speculation." *Witcher v. State*, 638 S.W.3d 707, 710 (Tex. Crim. App. 2022) (quoting *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)). A reviewing court, faced with a record of

16

historical facts supporting conflicting inferences, must presume the factfinder resolved any such conflict in favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326.

Section 21.02(b) of the Texas Penal Code states that a person commits the offense of continuous sexual abuse of a young child if:

(1)     during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2)     at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

(A)     a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense

TEX. PENAL CODE § 21.02(b)(1)–(2)(A). The uncorroborated testimony of a child victim is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.07(a); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.) ("The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child."). Testimony from an outcry witness, standing alone, can also be sufficient to support a conviction for continuous sexual abuse of a child. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (holding testimony from outcry witness was sufficient to support conviction for aggravated sexual assault of child).

The State need not prove that an offense was committed on the date alleged in the indictment; instead, the State need only prove "that the offense was committed on any date prior to the return of the indictment and within the period of limitations." *Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd). "The primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by the statute of limitations." *Cavazos v. State*, No. 01-19-00654-CR, 2021 WL 3669334, at *4 (Tex. App.—Houston [1st Dist.] Aug. 19, 2021, no pet.) (mem. op., not designated for publication). There is no statute of limitations for the offense of continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 12.01(1)(d) (providing "no limitation" for "continuous sexual abuse of young child or disabled individual under Section 21.02, Penal Code").

The Texas Legislature created the offense of continuous sexual abuse of a child "in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (quoting *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.)). Thus, to establish the offense of continuous sexual abuse of a child, the State need not prove the exact dates of the alleged abuse. Rather, the State need only establish that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Buxton*

18

*v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (quoting *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.)). "[I]f evidentiary facts regarding the alleged abuse exceed the date range in the indictment, that testimony can be considered to show the continuous nature of the abuse." *See Moreno v. State*, 619 S.W.3d 754, 759 (Tex. App.—San Antonio 2020, no pet.) (citing *Kuhn v. State*, 393 S.W.3d 519, 525–29 (Tex. App.—Austin 2013, pet. ref'd)). "Where the record establishes numerous sexual contacts between an accused and a victim that exceed the scope of the indictment, a jury may rationally infer that the date range element of continuous sex[ual] abuse has been met." *See Moreno*, 619 S.W.3d at 759–60.

## B.   Analysis

Fernandez argues the evidence is insufficient to prove that two or more acts of sexual abuse occurred between July 17, 2017 and October 31, 2017, as alleged in the indictment, because while "several witnesses testified that the alleged sexual abuse began in July 2017," no witness "testified to another date between July 17, 2017[] and October 31, 2017." Fernandez concedes the State need not prove the exact dates of the alleged abuse. Despite his concession, Fernandez argues "the State is still required to prove two instances of sexual abuse within the indicted time period as the State alleged." In response, the State asserts that the evidence is sufficient to prove that two or more acts of sexual abuse occurred between July 17, 2017 and

October 31, 2017, because K.V.'s and Holcomb's testimony established that the abuse began in July 2017 and lasted "over a period of at least six months—substantially more time than alleged in the indictment or required by law." We agree.

During her testimony, K.V. described multiple instances of sexual abuse by Fernandez and when asked how often the abuse happened, K.V. stated, "Pretty often. Maybe twice a month." According to K.V., Fernandez sexually abused her in the kitchen of their home during the summer of 2017, when she was twelve years old. K.V. recalled that she was thirteen years old the last time Fernandez sexually assaulted her. K.V. turned thirteen years old in November 2017. The jury could thus reasonably infer from K.V.'s testimony that Fernandez sexually assaulted K.V. "[m]aybe twice a month," starting in the summer of 2017 until sometime after she turned thirteen years old in November 2017. Consequently, Fernandez committed two or more acts of sexual abuse against K.V. between July 17, 2017 and October 31, 2017, as alleged in the indictment. *See Moreno*, 619 S.W.3d at 759–60 ("Where the record establishes numerous sexual contacts between an accused and a victim that exceed the scope of the indictment, a jury may rationally infer that the date range element of continuous sex[ual] abuse has been met.").

Although K.V.'s uncorroborated testimony is sufficient to support Fernandez's conviction, Holcomb, the designated outcry witness, as well as Dr.

Isaac testified to facts from which a rational jury could have inferred that Fernandez committed two or more acts of sexual abuse against K.V. between July 17, 2017 and October 31, 2017. *See generally Rodriguez*, 819 S.W.2d at 873 (holding testimony from outcry witness sufficient to support conviction for aggravated sexual assault of a child).

Dr. Isaac testified that during her medical examination of K.V., K.V. reported that Fernandez touched her more than three times between July 2017 and either December 2017 or January 2018. K.V. also described eight separate instances of sexual abuse to Holcomb, the first of which occurred in the kitchen in July 2017. During that first incident, Fernandez forced K.V. to remove her pants and underwear before he touched her "bottom" and vagina with his hands, and he rubbed his fingers "between" her vagina. During the second incident, which occurred a "couple months after July" 2017, Fernandez forced K.V. to remove her clothes and then "grabb[ed] her butt" with his hands and "put[] his fingers there" and "rubb[ed] it."

Further, Holcomb's testimony reflected that K.V. reported to her that Fernandez abused her in the bathroom of their home in January 2018. According to K.V., Fernandez "made her sit on the bathtub [with no clothes on] and open her legs" and he rubbed K.V.'s vagina with his hands. K.V. also described to Holcomb a seventh incident that occurred "a few weeks" before their February 22, 2018 interview, during which Fernandez forced her to remove her clothes before he

21

covered the tip of his penis with his hand and rubbed his penis between her bare legs. The last instance of abuse K.V. reported to Holcomb also occurred sometime before the February 22, 2018 interview, during which Fernandez again covered the tip of his penis with his hand and placed his penis "between [K.V.'s] legs."[3] Although Fernandez's penis touched K.V.'s vagina, "it didn't go inside." K.V. told Holcomb that Fernandez also forced K.V. to put her leg up on a box and to rub her vagina as he watched.

Holcomb's and Dr. Isaac's testimony is evidence that Fernandez sexually abused K.V. multiple times between July 2017 and late January or early February 2018. This evidence, whether coupled with K.V.'s testimony or standing alone, is sufficient to allow a rational jury to conclude that Fernandez committed two or more acts of sexual abuse against K.V. between July 17, 2017 and October 31, 2017. *See* TEX. PENAL CODE § 21.02(b)(1)–(2)(A); *Moreno*, 619 S.W.3d at 759–60 ("Where the record establishes numerous sexual contacts between an accused and a victim that exceed the scope of the indictment, a jury may rationally infer that the date range element of continuous sex[ual] abuse has been met.").

We conclude that, when viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found beyond a reasonable doubt that

---

[3] K.V. also described to Holcomb three other incidents of abuse by Fernandez, but Holcomb did not testify as to the timing of those acts of abuse.

22

Fernandez committed two or more acts of sexual abuse against K.V. during a period of time that is thirty or more days in duration. *See* TEX. PENAL CODE § 21.02(b)(1)–(2)(A).

We overrule Fernandez's first issue.

**Admission of Evidence**

In his second and third issues, Fernandez challenges the trial court's admission of Holcomb's testimony that Fernandez threatened to kill K.V. Fernandez also challenges the admission of Dr. Isaac's and Elder's testimony concerning statements K.V. made to them about the alleged sexual abuse.

**A.  Standard of Review**

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Id.* at 83; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (stating trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree").

**B.  Extraneous Bad Acts**

In his second issue, Fernandez argues the trial court abused its discretion by allowing Holcomb to testify during the guilt-innocence phase of trial that Fernandez

23

threatened to kill K.V. and her family. He argues the testimony is inadmissible under Texas Rule of Evidence 404(b), because it is "inherently prejudicial" and serves no purpose other than establishing that Fernandez acted "in conformity" with his character.

## 1. Texas Rule of Evidence 404(b)

Generally, the erroneous admission of evidence constitutes non-constitutional error, subject to a harm analysis requiring reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). A substantial right is affected when the error had "a substantial and injurious effect or influence in determin[ing] the jury's verdict." *See id.*; *see also King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Conversely, an error does not affect a substantial right if we have fair assurance that the error did not influence the jury or had but a slight effect. *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000) (internal quotations omitted).

"An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused." *Martinez v. State*, 190 S.W.3d 254, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (internal quotations omitted). Texas Rule of Evidence 404(b) prohibits the admission of extraneous offenses to

prove a person's character or to show that the person acted in conformity with that character, but it allows the admission of such evidence for other purposes. TEX. R. EVID. 404(b). Rule 404(b) states:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

*Id.* The admissible purposes enumerated in Rule 404(b)(2) are not "collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Apart from proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, such evidence is also admissible to rebut a defensive theory. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding extraneous-offense evidence is admissible to rebut defensive theory of fabrication).

Evidence of an extraneous offense or bad act is also admissible to explain the reason for a sexual assault victim's delayed outcry of abuse. *See Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding sexual assault victim's testimony that defendant threatened to kill her family was admissible to show reason

25

for delayed outcry); *Wilson v. State*, 90 S.W.3d 391, 394 (Tex. App.—Dallas 2002, no pet.) (holding trial court did not abuse its discretion by admitting child's testimony that she waited to tell anyone about abuse because defendant had previously assaulted her mother and child was scared defendant would hurt her mother if disclosed abuse) (citing *Brown*, 657 S.W.2d at 119); *see also Garrett v. State*, No. 05-13-00883-CR, 2015 WL 4751218, at *2 (Tex. App.—Dallas Aug. 12, 2015, pet. ref'd) (mem. op., not designated for publication) ("under Texas Rule of Evidence 404(b)(2), evidence of extraneous offenses or acts may be admissible to prove . . . the reason a sexual assault victim failed to report the assault promptly").

### 2. Analysis

On appeal, Fernandez argues that Holcomb's testimony that he "threatened to kill" K.V. and her family members is inadmissible because it has no relevance apart from showing that Fernandez "acted in conformity" with his character and "it unfairly painted Fernandez as a violent, vengeful person at the guilt or innocence phase of the trial." The State responds that Holcomb's testimony regarding this extraneous bad act is admissible because it explains K.V.'s delayed outcry of abuse and refutes Fernandez's defensive theory of fabrication. The State further contends that Holcomb's testimony about the threat is otherwise admissible under Article 38.37, section 1(b) of the Texas Code of Criminal Procedure, pertaining to evidence

of extraneous offenses or acts,[4] because it shows K.V.'s state of mind and her subsequent relationship with Fernandez.[5]  *See* TEX. CODE CRIM. PROC. art. 38.37, § 1(b).

Holcomb's testimony was not offered to establish that Fernandez acted in conformity with his character.  Rather, Holcomb's testimony that K.V. was scared to tell anyone about the abuse because Fernandez "threatened to kill [K.V.] and her family members," was in direct response to the State's question about the reason for K.V.'s delayed outcry of abuse.  Such evidence is admissible under Rule 404(b) to explain K.V.'s delayed outcry.  *See Brown*, 657 S.W.2d at 119 (holding sexual assault victim's testimony that defendant threatened to kill her family was admissible to show reason for delayed outcry); *see also Garrett*, 2015 WL 4751218, at *2 (holding sexual assault victim's testimony defendant had assaulted victim's

---

[4]   Article 38.37, Section 1(b) of the Texas Code of Criminal Procedure provides that notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child."  TEX. CODE CRIM. PROC. art. 38.37, § 1(b).

[5]   Fernandez does not address the State's arguments that Holcomb's testimony regarding the extraneous bad act is admissible because it explains K.V.'s delayed outcry of abuse, refutes Fernandez's defensive theory of fabrication, and is otherwise admissible under Article 38.37, Section 1(b) of the Texas Code of Criminal Procedure.

27

mother and brother was admissible under Rule 404(b)(2) to show reason for delayed outcry).

Because we hold Holcomb's testimony was admissible under Texas Rule of Evidence 404(b)(2) to explain K.V.'s delayed outcry of abuse, we need not consider whether Holcomb's testimony is also admissible under Rule 404(b)(2) to rebut Fernandez's defensive theory of fabrication or admissible under Texas Code of Criminal Procedure Article 38.37, Section 1(b) because it is relevant to K.V.'s state of mind and her relationship with Fernandez.

We further note that, before the challenged testimony was admitted, Holcomb testified, without objection from defense counsel, that Fernandez threatened to kill K.V. and her family, and that he held a gun against her mother's and brother's heads. The erroneous admission of evidence is harmless when "other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). Thus, even if the admission of Holcomb's testimony that Fernandez threatened to kill K.V. and her family were erroneous, the error, if any, was harmless because Holcomb previously testified about the alleged threats without objection. *See Coble*, 330 S.W.3d at 282; *Watkins v. State*, 333 S.W.3d 771, 779–80 (Tex. App.—Waco 2010, pet. ref'd) (stating that even if admission of testimony regarding extraneous offense was error, "the error, if

28

any, was harmless because the same or similar testimony was introduced elsewhere without objection").

We overrule Fernandez's second issue.

## C. Outcry Witness Testimony

In his third issue, Fernandez argues the trial court abused its discretion by allowing multiple outcry witnesses to testify about the same instances of abuse. According to Fernandez, Dr. Isaac and Elder testified about some of the same details of K.V.'s sexual abuse that Holcomb testified to at trial. The State responds that Holcomb was the only qualified outcry witness and Dr. Isaac's and Elder's testimony concerning the details of K.V.'s sexual abuse was admissible under Texas Rule of Evidence Rule 803(4), which creates a hearsay exception as to statements made for purposes of medical diagnosis and treatment. The State further contends that Fernandez did not preserve his challenges to Elder's and Dr. Isaac's testimony for appellate review.

At trial, Holcomb, the qualified outcry witness, testified in detail about the eight incidents of sexual abuse K.V. disclosed to her, which, according to K.V., began in July 2017. According to Holcomb, K.V. reported that Fernandez (1) ordered K.V. into the kitchen where he touched her vagina, (2) told K.V. to bend over and then he put his fingers between her "butt cheeks," (3) took K.V to his bedroom and forced her to stand naked while he touched her "butt cheeks," chest,

and vagina, (4) forced K.V. to touch her vagina, (5) made K.V. touch his penis and then he touched her breasts and vagina, (6) put his penis against K.V.'s vagina,(7) touched K.V.'s vagina with his hands, and (8) licked K.V.'s vagina.

Dr. Isaac testified that K.V. reported during her medical examination of K.V. that Fernandez (1) touched K.V.'s vagina with his hands under her underwear, and (2) touched K.V. with his penis between her legs and vagina. K.V. claimed that the sexual abuse happened more than three times between July 2017 and either December 2017 or January 2018. During the trial, Fernandez did not object on any grounds to Dr. Isaac's testimony regarding K.V.'s statements.

Elder, K.V.'s therapist, testified that K.V. told her during K.V.'s therapy sessions that Fernandez (1) made K.V. go into the kitchen, where Fernandez stroked her vagina, and (2) took K.V. to his bedroom, forced her to take off her clothes, touched her vagina, and touched her breasts. At trial, defense counsel raised three objections to Elder's testimony on the grounds that the testimony was (1) leading, (2) called for a narrative, and (3) improperly "vouch[ed] for the testimony of the complaining witness."

### 1. Hearsay Exceptions

Texas Rule of Evidence 802 precludes the admission of hearsay statements, which are out-of-court statements "offer[ed] in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d), 802. Hearsay is not admissible unless it

falls within an exception listed under the Texas Rules of Evidence or other rule or statute. TEX. R. EVID. 802. The admissibility of an out-of-court statement under a hearsay exception is within the trial court's discretion. *Kesaria v. State*, 148 S.W.3d 634, 641 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006).

Two hearsay exceptions are relevant here. First, Article 38.072 of the Texas Code of Criminal Procedure, also known as the "outcry statute," creates an exception to the hearsay rule in cases involving allegations of sexual assault against a child younger than 14 years of age. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2. The rule allows the admissibility of a child-complainant's out-of-court statements describing the alleged offense "so long as those statements were made 'to the first [adult] person . . . to whom the child . . . made a statement about the offense.'" *Bays*, 396 S.W.3d at 585 (quoting TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(1)–(3)).[6] Hearsay testimony from more than one outcry witness may be admissible under Article

---

[6] Among other things, the outcry statute requires a trial court to conduct a hearing, outside the presence of the jury, to determine whether "the statement is reliable based on the time, content, and circumstances of the statement," rendering the statement admissible. TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). "When no hearing is conducted, the statutory requirements [of Article 38.072] have not been met, the [hearsay] exception is not invoked, and the testimony constitutes inadmissible hearsay." *Lopez v. State*, 315 S.W.3d 90, 98 (Tex. App.—Houston [1st Dist.] 2010), *rev'd on other grounds*, 343 S.W.3d 137 (Tex. Crim. App. 2011). Fernandez is not complaining that the trial court abused its discretion by allowing Elder and Dr. Isaac to testify as outcry witnesses without holding a hearing to assess the reliability of their testimony.

38.072 but only if the witnesses testify about different events. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). To invoke the outcry statute exception, the party intending to offer the outcry statement must give written notice to the adverse party identifying the names of the outcry witnesses and a summary of their testimony. TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1). The trial court must then conduct a reliability hearing, outside of the presence of the jury, to determine the reliability of the witnesses' testimony, and the child victim must testify or be available to testify at the proceeding.[7] *Id.* § 2(b)(2)–(3).

Second, Texas Rule of Evidence 803(4) creates an exception to the hearsay rule statements made for purposes of medical diagnosis or treatment. TEX. R. EVID. 803(4). Rule 803(4) applies to a statement that:

(A)   is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

(B)   describes medical history; past or present symptoms or sensations; their inception; or their general cause.

---

[7]   The record reflects the State gave Fernandez written notice of its intent to admit K.V.'s hearsay statements through Holcomb and provided a summary of Holcomb's testimony. The trial court conducted an Article 38.072 hearing to assess the reliability of Holcomb's testimony outside the jury's presence, and K.V. testified at trial. Fernandez does not dispute that Holcomb is a properly designated outcry witness or argue that the trial court abused its discretion by allowing Elder and Dr. Isaac to testify as outcry witnesses without holding a hearing to assess the reliability of their testimony.

*Id.* This exception is premised on the assumption the patient understands the importance of providing truthful information to her medical personnel to ensure an accurate diagnosis or treatment. *See Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd); *Burns v. State*, 122 S.W.3d 434, 438 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

### 2. Preservation

If, on appeal, "a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (quoting *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *see* TEX. R. APP. P. 33.1 (stating to preserve complaint for appellate review, record must show party raised complaint with trial court by a timely request, objection, or motion and trial court ruled or refused to rule). The State argues Fernandez failed to preserve error because he did not properly object to the admission of Elder's and Dr. Isaac's testimony about K.V.'s hearsay statements describing the sexual abuse. The State argues that although Fernandez objected only to Elder's testimony on other grounds, Fernandez did not complain to the trial court that Elder's and Dr. Isaac's testimony impermissibly amounted to cumulative outcry testimony, or otherwise "make a hearsay objection or any other specific objection."

At the beginning of Elder's direct testimony, Fernandez took Elder on *voir dire* under Texas Rule of Evidence 705(b), to question her about the facts or data supporting her expert opinion. After Elder testified that she did not verify the information K.V. provided to her during the therapy sessions, Fernandez raised the following objection:

Defense Counsel:

> And that's the problem with this type of testimony, Your Honor. She's making statements and -- as if what is being told to her is truth. The jury is going to hear this as truth, but the -- Ms. Elder cannot vouch -- I mean, she's just taking statements. She doesn't know if they're true or not, and the way it's being portrayed in the courtroom as if what is being told to her is truth.

The Court:

> And you're saying with that what, Defense counsel?

Defense Counsel:

> She's vouching for the testimony of the complaining witness.

The Court:

> And what is your legal objection?

Defense Counsel:

> Well, that's it. She's --

The Court:

> I guess, Defense counsel, at the end of the day the jury is the exclusive judges of the facts, the credibility of the witnesses. So they will make a determination about whether or not Ms. Elder's testimony is credible or uncredible.

Elder testified on direct examination that K.V. reported that on one occasion, Fernandez made her remove her clothes and then stroked his penis and touched her vagina and breasts while he yelled at her. K.V. also told Elder that on another occasion, Fernandez forced K.V. to remove her pants and bend over, and then he stroked her vagina while yelling and cursing at her. Fernandez did not object to Elder's testimony on the grounds it was inadmissible or cumulative of Holcomb's testimony regarding the same instances of sexual abuse.

Dr. Isaac testified that, during her medical examination of K.V. at the CAC, K.V. reported that Fernandez touched her vagina with his hands and his penis, and the touching occurred more than three times between July 2017 and either December 2017 or January 2018. Fernandez did not object to Dr. Isaac's testimony on any grounds.

Because Fernandez did not object at trial to Elder's or Dr. Isaac's challenged testimony on grounds it was inadmissible or cumulative of Holcomb's testimony regarding the same instances of sexual abuse, Fernandez did not preserve error, preventing us from considering his complaint on appeal. *See Martinez*, 98 S.W.3d at 193; *see also Bowen v. State*, No. 01-18-00612-CR, 2019 WL 6314904, at *8 (Tex. App.—Houston [1st Dist.] Nov. 26, 2019, no pet.) (mem. op., not designated for publication) (overruling appellate complaint concerning multiple outcry

witnesses for same incident because it did not comport with trial objection to reliability of outcry testimony).

### 3. Admission of Elder's and Dr. Isaac's Testimony

Even if Fernandez had preserved his challenge to the admission of Elder's and Dr. Isaac's testimony about K.V.'s allegations of abuse, he would not prevail on appeal. Rule 803(4) creates a hearsay exception for statements "made for—and [] reasonably pertinent to—medical diagnosis or treatment" that describe the patient's "medical history; past or present symptoms or sensations; their inception; or their general cause." TEX. R. EVID. 803(4) (creating exception to hearsay rule for statements made for purposes of medical diagnosis or treatment).

During her medical examination, K.V. reported to Dr. Burge that Fernandez touched her vagina with his hands and his penis more than three times between July 2017 and either December 2017 or January 2018. As Dr. Isaac explained, it was necessary for the examiner to have this information to "determine both the diagnosis and treatment of the child." Dr. Isaac's testimony about the statements K.V. made to Dr. Burge during her medical examination was thus admissible as a hearsay exception under Texas Rule of Evidence 803(4). *See Bargas v. State*, 252 S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("Hearsay statements by a suspected child victim of abuse regarding causation, source of abuse, or

describing abusive acts are admissible under Rule 803(4) as being pertinent to the medical treatment of a victim.").

During her therapy sessions, K.V. disclosed to Elder that Fernandez made her remove her clothes and then yelled at her, stroked his penis, and touched her vagina and breasts. K.V. also disclosed to Elder that on a separate occasion, Fernandez forced K.V. to remove her pants and bend over, and then he stroked her vagina while yelling and cursing at her. *See id.* ("Statements regarding abuse made to a psychologist or therapist are made for the purpose of medical diagnosis and treatment."). Elder explained that K.V.'s statements concerning the details of the abuse were vital to her treatment of K.V. because, for K.V. to graduate from therapy, it was necessary for K.V. to talk about the abuse without experiencing trauma symptoms, such as nightmares and flashbacks. Elder's testimony about K.V.'s statements detailing the abuse, made to her during K.V.'s therapy sessions, was thus admissible under the Rule 803(4) hearsay exception. *See id.*

Because Elder's and Dr. Isaac's testimony regarding K.V.'s disclosures to them concerning the sexual abuse were admissible under Rule 803(4), the trial court did not abuse its discretion by admitting their testimony. *See Henley*, 493 S.W.3d at 82–83.

We overrule Fernandez's third issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do Not Publish.   TEX. R. APP. P. 47.2(b).